Ivan RUIZ, et al., Plaintiffs, Appellants,

v.

**POSADAS DE SAN JUAN ASSOCIATES,**
Defendant, Appellee.

No. 97–1065.

United States Court of Appeals,
First Circuit.

Heard June 3, 1997.

Decided Aug. 18, 1997.

Jose L. Rivero Vergne, Hato Rey, PR, for appellants.

Nilda M. Navarro–Cabrer, Hato Rey, PR, for appellee.

Before SELYA, CYR, and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Appellants Ivan Ruiz and Estela Díaz, husband and wife, challenge various district court rulings relating to their claims against appellee Posadas de San Juan Associates, Inc. ("Posadas" or "Hotel"), alleging, *inter alia*, age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Puerto Rico "Law 100," 29 L.P.R.A. § 146 *et seq.* As we conclude that appellants failed to generate a trialworthy dispute regarding their federal claims, we affirm the district court judgment.

# I

## *BACKGROUND* [1]

In 1985, appellant Ivan Ruiz began work as a housekeeper at the "Hotel San Juan & Casino" ("Hotel"), owned by Posadas, a New York corporation. By 1987 Ruiz had been promoted to Team Leader, Housekeeping Department, responsible for supervising housekeeping in Hotel "public areas" (*e.g.*, offices, meeting rooms, gymnasium). Beginning in 1991, he worked five nights a week on the 8:00 p.m. to 4:00 a.m. shift.

As a Team Leader, Ruiz received mixed performance ratings. During the period from 1987 through 1993, the average annual performance rating Ruiz received ranged from lows of 3.30 in 1987 and 1989, to a high of 4.02 in 1990.[2] Ruiz received regular salary increases throughout his tenure. In addi-

---

1. The material facts in genuine dispute are related in the light most favorable to appellants, who opposed summary judgment. *Velez–Gomez v. SMA Life Assur. Co.*, 8 F.3d 873, 875 (1st Cir. 1993).

2. On a scale of 1 to 5, "3" indicated that standard job requirements were met; "4" that the requirements were exceeded "in many instances"; "5" that the requirements were "consistently" exceeded.

tion, he received three merit certificates for excellent supervisory performance and a "good" overall rating in 1992.

During his tenure, however, Ruiz received some criticism. In 1988, he was criticized by Felix Joseph, his supervisor at the time, for "total negligence ... or total and complete disregard of ... Company Policy or both," following an unannounced one-day absence from work. In 1990, a different supervisor, Eddie Ortiz, noted "major cleaning deficiencies" in the areas for which Ruiz was responsible—specifically, trash not picked up, rooms not cleaned, and furniture not dusted—as well as a general "lack of attention" to cleaning responsibilities in the Hotel corporate offices. Finally, in 1993, yet another supervisor, Jorge Serrano, warned Ruiz about poor cleaning in the gymnasium and filed a contemporaneous disciplinary report against him.

Ruiz, on the other hand, dates most of his employment problems from late 1993, when Luis Rivera, age 32, became Hotel Executive Housekeeper. Rivera regularly criticized Ruiz, verbally and in writing, on his job performance.[3] In March 1994, Rivera rated Ruiz's performance for 1993 as "need[ing] improvement" in three areas: accepting criticism, solving problems, and quality of performance. Rivera noted that Ruiz blamed others for his own deficiencies, responded lackadaisically to guest requests, and provided inadequate supervision to subordinates. After Ruiz complained to Rivera, the performance evaluation was changed from "need[ing] improvement" to "satisfactory," but Rivera did not soften the negative written commentary. The average rating Ruiz received for 1993 was 3.69.[4] *See supra* note 2.

Beginning in 1993, Victoria Greber, Executive Assistant Manager, "Rooms Division," likewise complained that Hotel public areas were found to be untidy following Ruiz's shift. Felipe Mercado, the night manager ultimately responsible for supervising Ruiz, complained directly to Greber about uncleanliness in areas for which Ruiz was responsible. Other unfavorable comments relating to the untidiness of Hotel public areas following Ruiz's shift were noted in the Hotel log books—daily diaries describing, *inter alia,* the physical condition of the Hotel—by various Hotel employees including Rivera.

During the Spring of 1994, the occupancy rate at the Hotel dropped dramatically, resulting in severe shortfalls in Hotel revenues and prompting work-force reductions by the administration. In May 1994, Greber met with Rivera and Egidio Colón, Human Resources Director, to evaluate the personnel records of all employees holding an employment position within any category targeted for reduction, which included a Team Leader position in the Housekeeping Department, "Rooms Division." [5]

After the personnel file on each Team Leader in the Housekeeping Department had been reviewed, and following receipt of input from Colón and Rivera, Greber determined to discharge Ruiz. According to both Colón and Greber, the dispositive factors were the negative written evaluations (Ruiz posted the lowest average scores of any Team Leader), the negative commentaries, the disciplinary

---

3. For example, in February 1994 Rivera notified Ruiz that many complaints had been lodged regarding the Hotel offices and that inspection had disclosed failures to dust, pick up trash, clean window areas, and clean bathrooms. Rivera warned Ruiz that he expected "immediate action" and that "[f]ailure to comply" would "result in disciplinary action."

4. The annual ratings Ruiz received during his tenure were:

| Evaluation Date | Score | Comparison to Rivera's Rating of Ruiz for 1993 calendar year |
|---|---|---|
| 03–02–94 | 3.69 | the rating given by Rivera |
| 11–12–92 | 3.68 | lower than Rivera's score |
| 11–01–91 | 3.39 | lower " " " |
| 10–30–90 | 4.02 | higher " " " |
| 11–10–89 | 3.30 | lower " " " |
| 07–30–89 | 3.47 | lower " " " |
| 01–06–87 | 3.30 | lower " " " |

5. At the time, there were four Team Leaders in the Housekeeping Department: John Waters, age 61, Steven Rosado, age 27, Carlos Carrasquillo, age 34—all of whom worked the day shift—and Ruiz, age 61, who worked the night shift only. Carrasquillo and Rosado had less seniority in their respective Team Leader positions than Ruiz. Rosado had been a Team Leader for only seven months, and Carrasquillo had become a Team Leader one year after Ruiz.

warnings, the complaints from night manager Felipe Mercado, and the negative log-book notations regarding the uncleanliness of the public areas following Ruiz's shifts.

On June 2, 1994, Ruiz was fired, after being told that the Hotel was undergoing "reorganization," and "adjustments" in the "Rooms Division" were necessary. Following Ruiz's dismissal, supervisory responsibility for the night shift was divided between Carrasquillo and Waters, both of whom continued to serve as Team Leaders on their daytime shifts as well.[6]

On June 7, 1994, Ruiz filed age-discrimination charges with the Equal Employment Opportunity Commission and the Antidiscrimination Unit of the Puerto Rico Department of Labor, requesting reinstatement. On November 18, 1994, a preexisting Team Leader position in the Housekeeping Department became vacant when Mr. Rosado, *see supra* note 5, was promoted to Public Areas Manager. The Hotel did not inform Ruiz of the vacancy, however, instead promoting Alexis Vargas, age 26, to Team Leader.

On March 24, 1995, his administrative remedies exhausted and a "right to sue" letter in hand, Ruiz (and spouse) filed a complaint in the United States District Court for the District of Puerto Rico, alleging that the Hotel, during 1993–94, had a policy of discharging older employees, in violation of the ADEA and "Law 100." Following extended discovery proceedings, the Hotel moved for summary judgment. In their opposition, appellants asserted, for the first time, that the Hotel's failure to *rehire* Ruiz, and its hiring of Vargas, likewise violated Puerto Rico "Law 100." Thereafter, appellants sought leave to amend their original complaint to state additional ADEA claims, alleging a failure to *rehire* based on age and claiming

retaliation in response to Ruiz's filing of administrative charges against the Hotel.

The district court granted summary judgment for the Hotel, after determining that the proffered evidence on the ADEA discriminatory discharge claim was inadequate for a *prima facie* showing that the Hotel either failed to treat age neutrally or replaced Ruiz with a younger worker, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Woodman v. Haemonetics Corp.,* 51 F.3d 1087 (1st Cir. 1995). It also dismissed the pendent Commonwealth claim under "Law 100," as there was no longer an independent basis for asserting federal jurisdiction. Finally, the court denied the motion to amend the complaint, on the ground that its new allegations, "even if supported, ... [would] not sustain an ADEA claim. That is, plaintiffs would [sic] have established a *prima facie* case of age discrimination."

## II

### *DISCUSSION* [7]

#### A. *Wrongful Discharge Claim Under ADEA*

##### 1. *Prima Facie Case*

■ Our analysis is governed by the familiar burden-shifting framework enunciated in *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25 and adapted for use in ADEA cases, *see, e.g., Woodman,* 51 F.3d at 1091. Absent direct evidence of age discrimination, a claimant whose employment was terminated through a reduction in force ("RIF") first must make a *prima facie* showing that: 1) he was at least forty years old; 2) met the employer's legitimate job expecta-

---

6. The Hotel fired ten employees in all; two within the protected age group, including Ruiz. Ruiz was the only Team Leader in the Housekeeping Department to be fired. Two nonsupervisory employees in the same department were fired, aged 25 and 29.

  In addition, another 111 employees left the Hotel between April and June, 1994. These included temporary employees whose contracts were not renewed; retirements; resignations; and terminations for cause. Among these 111 employees, nine (*i.e.,* 8%) were 40 years or older.

7. We consider the summary judgment ruling *de novo,* viewing the record in the light most favorable to Ruiz, the nonmoving party, and drawing all reasonable inferences in his favor. *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). On the other hand, we must affirm if the record reveals no trialworthy issue of material fact and the Hotel was entitled to judgment as a matter of law. *See id.* Moreover, we may affirm "on any independently sufficient ground." *Polyplastics, Inc. v. Transconex, Inc.,* 827 F.2d 859, 860–61 (1st Cir.1987).

tions; 3) was fired; and 4) that age was not treated neutrally in implementing the RIF, *or* younger individuals were retained in the same position. *Id.* We need not consider the fourth prong, however; including Ruiz's contention that the Hotel retained two younger employees—*i.e.*, Rosado and Carrasquillo—in the same occupational classification, since there is an alternative ground for affirmance. *See Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 860–61 (1st Cir.1987). We therefore assume, without deciding, that Ruiz made out a *prima facie* case of age discrimination by demonstrating that younger workers were retained in the same position. *See Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 538 (1st Cir.1996).

### 2. *Pretext*

■ In order to rebut the presumption that arises upon the establishment of a *prima facie* case—*i.e.*, that the employer engaged in intentional age-based discrimination, *see Woodman*, 51 F.3d at 1091—the employer need only produce enough competent evidence, *taken as true,* to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action, *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); *Woodman*, 51 F.3d at 1091 (same). At that point, the employee "must demonstrate that the proffered reason for the adverse employment action was simply a pretext for age discrimination," *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir.1993), which in turn requires that the employee proffer enough competent evidence to support *two* findings: 1) the employer's proffered reason was pretextual; *and,* 2) its true motive was age discrimination. *Udo v. Tomes*, 54 F.3d 9, 12–13 (1st Cir.1995). The burden of *persuasion* remains on the plaintiff employee at all times. *LeBlanc*, 6 F.3d at 842.

■ There is no dispute that the Hotel experienced significant financial difficulties in the Spring of 1994 and terminated ten employees as part of a legitimate RIF.[8]

Moreover, Victoria Greber, the executive directly responsible for the decision to discharge Ruiz, attested that financial difficulties prompted the employee discharges, both in her own department and throughout the Hotel. She explained, again without contradiction, that she determined to discharge a Team Leader in the Housekeeping Department because she considered it an expendable "medial" position between the housekeepers, who do the cleaning, and the Hotel management. She further explained that Ruiz was selected for termination because his employment record was the weakest among all Team Leaders. Careful review bears out that Greber's explanation is entirely consistent with the undisputed documentary evidence that Ruiz had received more disciplinary warnings, and the lowest average evaluation ratings, of any Team Leader in the Housekeeping Department, as well as the only negative written commentary. Thus, the Hotel met its burden of production under the second prong of the *McDonnell Douglas* test. *See LeBlanc*, 6 F.3d at 844–45.

■ Accordingly, the presumption of age discrimination has vanished, *see id.*, and we inquire whether the evidence, *"in its entirety,"* would permit a reasonable factfinder to infer that the proffered reason for the dismissal was pretextual *and* that the true reason was an age-based animus, *see id.* (emphasis added). In pursuing this inquiry, we focus on whether the employer believed that its proffered reason was credible. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (1st Cir.1991). That is, Ruiz must do more than cast doubt on the rationale proffered by the employer, *see Connell v. Bank of Boston*, 924 F.2d 1169, 1172 (1st Cir.1991), the "evidence must be of such strength and quality as to permit a reasonable finding that the ... [termination] was *obviously or manifestly unsupported."* *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 346 (1st Cir.1989) (emphasis added) (internal quotation marks omitted). The summary judgment record

---

**8.** Ruiz so concedes on appeal. *See* Brief for Appellants at 14 ("Ruiz does not contest that a

reduction in force was necessary in order to confront the Hotel's economic problems....").

generated no trialworthy issue on the ADEA wrongful discharge claim.[9]

■■■ Ruiz attempted to demonstrate that Rivera was responsible for an atmosphere of age-based discrimination, in the Housekeeping Department, which influenced the decision to terminate him. He relied on an affidavit from Carmen Peña, age 54, formerly employed in the Housekeeping Department, who attested that Rivera expected more from her than from younger workers; asked her age; stated that she didn't look good for her age; inquired about her health and suggested that a job change might be beneficial. Peña acknowledged, however, that Rivera never asked, let alone ordered, her to transfer. Moreover, Peña attributed another remark to Rivera—that all female workers at the Hotel were *overworked*. In addition, the Moreales affidavit states, *inter alia, see also supra* note 9, that Rivera harbored an "obvious" bias toward younger workers. The only explication Moreales offered for this conclusion, however, was that Rivera had pressured older workers, unfairly reprimanded older workers in front of younger ones, and treated two older supervisors, including Ms. Peña,

in a "disrespectful manner," but without providing an evidentiary foundation upon which it might reasonably be inferred that any pressure, reprimand, or disrespect was either discriminatory or age-based. *See LeBlanc*, 6 F.3d at 841.

Although we have allowed as how circumstantial evidence of a general discriminatory environment may add "color" to an employer's decisionmaking process, *see Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987), we have explained that "[p]roof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual," *Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 113 (1st Cir.1979). In all events, these proffers failed to establish a trialworthy claim that a "general" atmosphere of *age-based* discrimination existed in the Housekeeping Department, let alone that Ruiz was "riffed" for any reason other than the relative weakness of his work record.[10] Instead, without confronting the evidence, Ruiz concludes that he *must* have been discriminated against because his record had been improv-

---

**9.** An affidavit from Miguel Moreales, formerly a housekeeper with the Hotel, concludes that Ruiz was an excellent supervisor, but does not purport to compare Ruiz's work record with that of other Team Leaders. Moreales also opines that Ruiz's disciplinary warnings were unfounded because Ruiz always assigned a housekeeper to clean, and checked the area afterward. However, these conclusory statements did not demonstrate that the areas about which Ruiz was warned had been properly cleaned on the *particular* occasions identified in the warnings he received, much less that the warnings were unfounded, nor that Victoria Greber—who made the decision to fire Ruiz, *see supra* p. 246–47—could not reasonably have believed that the disciplinary warnings were warranted. *Cf. Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 674–75 (1st Cir.1996) (wherein plaintiff presented evidence that employer's cited reasons were pretextual).

Similarly, Ruiz attests that he was discharged due to his age, a belief based on his judgment that he had a good employment record. Even assuming his employment record passed muster, however, Ruiz proffered *no* evidence which would enable a rational jury to find that the Hotel's employment action was not soundly founded on its determination that Ruiz possessed the *least* worthy work-performance-record among all competing Team Leaders.

Finally, Ruiz *alleged* that the Hotel conducted a systematic purge of older workers, but admits he has no such personal knowledge or evidence. It is axiomatic that more is required than mere conclusory allegations and unsupported conjecture. *See LeBlanc*, 6 F.3d at 841; *Goldman*, 985 F.2d at 1116.

**10.** Ruiz presented no competent evidence that the Hotel "riffed" him, or any other employee, *based on age*. There is no evidence of any comment by *anyone* associated with the Hotel, including Rivera and Greber, about Ruiz's age or that age played *any part* in determining which employees would be let go. Moreover, the 1993 annual rating received from Rivera was the second highest Ruiz ever received. Nor did Ruiz address the undisputed evidence that all but two employees "riffed" by the Hotel were under forty, *see supra* note 6, which tends to suggest that the alleged systematic purge of employees was age-blind. *Cf. Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1114 (1st Cir.1989) (noting "rather startling" statistical evidence that 76% of all older employees were "riffed"). Finally, and most importantly, Ruiz proffered no evidence that he, among all employees holding a targeted Team Leader position, had not received the most disciplinary warnings, negative written comments, complaints from the night manager, and the lowest average annual performance rating—an average compiled from ratings given by various supervisors in addition to Rivera.

ing before Rivera became his supervisor and because his eight-year employment record cannot fairly be compared to the records of Team Leaders with less tenure. Ruiz's logic escapes us on both scores. First, as already noted, Ruiz received his next best performance rating ever from none other than Rivera. Second, if Team Leaders with less tenure—*i.e.* less experience—received better performance ratings than the more experienced Ruiz, it is difficult to discern how their superior performance reflects less well on them.

■ Furthermore, as we have stated repeatedly, we do not assume the role of a "super personnel department[ ], assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick,* 950 F.2d at 825; *see also LeBlanc,* 6 F.3d at 846 (similar). So it must be here. *See Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994), *cert. denied,* 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995) (stating that relief will not be granted "to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless the facts and circumstances indicate that discriminatory animus was the reason for the decision").

For the foregoing reasons, we hold that Ruiz failed to proffer competent evidence adequate to ward off summary judgment on the ADEA claim for wrongful discharge.

**B.  *The Motion to Amend***

Ruiz next contends that the district court erred in denying the motion to amend the complaint, *see* Fed.R.Civ.P. 15, to include ADEA claims based on the Hotel's allegedly discriminatory and retaliatory failure to rehire him. *See supra* p. 247.

**1.  *Standard of Review* [11]**

■ As Ruiz did not propose the amended complaint until seven months after the Hotel had moved for summary judgment, we treat the motion to amend as "an attempt to alter the shape of the case in order to

defeat summary judgment." *Glassman v. Computervision Corp.,* 90 F.3d 617, 623, (1st Cir.1996). Consequently, Ruiz must "demonstrate ... that the proposed amendments were supported by substantial and convincing evidence," *Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st Cir.1994) (citations and internal quotation marks omitted). Under the abuse of discretion standard, any sound reason apparent from the record is sufficient to support the district court ruling, *see id.,* including but not limited to undue delay, bad faith, dilatory motive, and the futility of the amendment, *see Grant v. News Group Boston, Inc.,* 55 F.3d 1, 5 (1st Cir. 1995).

**2.  *The District Court Ruling***

■ Ruiz contends that the district court confused the requirements an ADEA plaintiff must meet to establish a *prima facie* discriminatory discharge claim, with the separate standards for establishing *prima facie* claims of retaliation and discriminatory failure to rehire. He points to the district court's statement that the retaliation and failure-to-rehire claims, "even if supported, will not sustain an ADEA claim. That is, plaintiffs would [sic] have established a *prima facie* case of age discrimination[,]" and argues that the district court erroneously ruled that Ruiz could not prevail on the proposed *retaliation* and *failure-to-rehire* claims because he could not meet the *prima facie* showing required for a *discriminatory discharge* claim. We need not address this contention, however, as the record discloses an adequate alternative ground for affirmance. *See Resolution Trust Corp.,* 30 F.3d at 253.

■ Given the tardiness of the motion to amend, the question before us is whether Ruiz supported the proposed amended complaint with enough "substantial and convincing evidence," *id.,* of an age-based discriminatory animus. *See Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir. 1994) (stating that plaintiff must show discriminatory animus in failure-to-hire case); *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (stating that employ-

---

**11.**  We review the ruling on the motion to amend for "abuse of discretion." *Resolution Trust Corp.*

*v. Gold,* 30 F.3d 251, 253 (1st Cir.1994).

ee must demonstrate retaliatory animus); *see also id.* (stating that court may dispense with burden-shifting framework, and focus instead on whether the "evidence as a whole was sufficient to generate a jury question on pretext and discriminatory animus"). First of all, it must be noted that the mere fact Ruiz was not rehired does not itself afford a basis for inferring age discrimination. *See Udo,* 54 F.3d at 14 (stating that failure to rehire may simply show employer did not want to rehire employee). Second, though the timing of the decision to hire Vargas—coming as it did five months after Ruiz filed administrative charges—tends to favor Ruiz, it does *not* amount to "substantial and convincing evidence" of an age-based animus. *See Resolution Trust Corp.,* 30 F.3d at 253.

In addition, the essential thrust of the proposed amended complaint is that—coupled with Rivera's alleged discriminatory animus toward older employees—the decision to hire Vargas, rather than recall Ruiz, was patently irrational and, therefore, must have been a pretext for discrimination. However, the underlying thesis—that Vargas's qualifications were so *inferior* that the Hotel *could only* have been engaging in age-based discrimination and/or retaliation against Ruiz when it chose not to notify or rehire him—is seriously flawed.

First, Ruiz did not proffer sufficient evidence to enable a finding of discriminatory animus, either in the Housekeeping Department at large or toward him in particular. *See supra* pp. 249–50. Second, the fact that Ruiz, based on experience and past performance, may have been *qualified* to hold the Team Leader position which was given to Vargas, is *not* evidence that the Hotel was motivated by an age-based animus in withholding it from Ruiz. *See Woods,* 30 F.3d at 262.

In conclusion, whether or not it was shortsighted to bypass Ruiz in favor of Vargas, who had never received a disciplinary warning, it cannot be said that it was so absurd as

to defy rational belief. *See Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996) (refusing to "second-guess" hiring decision "absent clearer evidence of irrationality").[12] Accordingly, we are not confronted with such disparities in their respective employment records as would "virtually jump off the page and slap us in the face," *Odom v. Frank,* 3 F.3d 839, 847 (5th Cir.1993) (quoted in *Lehman,* 74 F.3d at 329), let alone combine with evidence of discriminatory animus to defeat summary judgment, *see Smith,* 40 F.3d at 16 (requiring minimally sufficient evidence of discriminatory animus). Consequently, we are not at liberty to "substitute ... [our] views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Id.* (quoted in *Lehman,* 74 F.3d at 329).

Therefore, as Ruiz proffered insufficient evidence from which an age-based discriminatory animus might reasonably be inferred in connection with the Hotel's decision to promote Vargas, rather than rehire Ruiz, *see Smith,* 40 F.3d at 16, he has not met the heavy burden of establishing that the proposed amended complaint was supported by "substantial and convincing evidence." *Resolution Trust Corp.,* 30 F.3d at 253.

### III

### *CONCLUSION*

Finally, since the district court supportably dismissed the federal claims, it permissibly declined to retain, *see* 28 U.S.C. § 1367, supplemental jurisdiction of the pendent claim under Commonwealth "Law 100." *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Accordingly, the district court judgment is affirmed.

***SO ORDERED.***

---

**12.** Moreover, Vargas also received several commendations for work performance in the Housekeeping Department, the Hotel laundry, and as a driver and chauffeur, as well as performance ratings *at least* comparable to those received by Ruiz. Vargas earned the following annual perfor-

mance ratings: 1987, 4.4; 1988, 3.74; 1989, 3.1; 1990, 4.0; 1991, 4.48; 1992, 4.3; 1993, 3.45; 1994, 3.59. *See also supra* note 4. In addition, Vargas had worked the day shift, which was regarded by Hotel management as more demanding than the night shift worked by Ruiz.