UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 98-1005

PETER W. SHORETTE, SR.,

Plaintiff, Appellant,

v.

RITE AID OF MAINE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Eugene W. Beaulieu, U.S. Magistrate Judge]

Before

Torruella, Chief Judge,

Cyr, Senior Circuit Judge,

and Stahl, Circuit Judge.

Arthur J. Greif, with whom Charles E. Gilbert III and Gilbert Law
Offices, P.A. were on brief for appellant.
Anne M. Carney, with whom Jonathan W. Brogan and Norman, Hanson &
DeTroy were on brief for appellee.

September 14, 1998

CYR, Senior Circuit Judge. Peter W. Shorette, Sr.,
appeals from the district court judgment which dismissed his age
discrimination claim against his former employer, Rite Aid of
Maine, Inc. ("Rite Aid"). We affirm.
I
BACKGROUND
For nearly thirty years Shorette worked as a store
manager for LaVerdiere Drug Stores ("LaVerdiere"). In 1994, Rite
Aid, a LaVerdiere competitor, constructed a new store across the
street from the LaVerdiere store which Shorette managed in
Fairfield, Maine. Later that year Rite Aid acquired LaVerdiere,
and converted all seventy-four LaVerdiere stores into Rite Aid
stores. Shorette, then 60 years of age, was receiving an annual
salary of $31,000 at the time, whereas Rite Aid store managers
received roughly $25,000. Unlike LaVerdiere store managers,
moreover, all Rite Aid store managers were provided in-store
computer systems with which to perform various managerial
functions, such as inventory and payroll. After the LaVerdiere
takeover, Rite Aid advised all former LaVerdiere managers that it
would retain them as managers, and train them on the Rite Aid
computer system. Since the Fairfield store which Shorette managed
was next door to the newly constructed Rite Aid store, and
therefore redundant, it was slated for closure. Before the
Fairfield store closed, however, Rite Aid brought in a temporary
computer setup in order to provide Shorette and his staff with six
days of in-store training. Thereafter, Rite Aid transferred
Shorette's staff to the new Rite Aid store, leaving Shorette alone
to man the old store until it was closed one month later. Finally,
during this interim period Shorette and other former LaVerdiere
managers attended a one-day computer training class. 
After the old store closed, Rite Aid transferred Shorette
to its Augusta store as an "assistant manager" or "manager trainee"
until such time as a new managership became available. During this
period, Shorette continued to receive his $31,000 annual salary,
while the Augusta store manager, Charles Pattershall, instructed
him on how to perform managerial tasks on the computer. After
three months, however, Pattershall reported to Rite Aid District
Manager Thurston Gilman that Shorette had been able to make little
progress. In December 1994, Gilman met with Shorette and informed
him that computer proficiency was an essential function for all
Rite Aid store managers. Although Pattershall resumed the training
effort with Shorette, he reported little headway.
One month later Gilman transferred Shorette to the Rite
Aid store in Waterville, whose manager, Wayne Cyrway, was a former
LaVerdiere store manager who had proven especially adept at
training store managers on the Rite Aid computer system. After
initially observing that Shorette had poor computer skills, Cyrway
determined to start "from scratch," and provided Shorette with one-
on-one, in-store computer training for up to twenty hours weekly. 
Over the next three months, James Lucier, the Rite Aid human
resources manager, checked with Cyrway, who reported that Shorette
seemed unable to absorb and retain the rudimentary concepts of
computer operation. 
In April 1995, Lucier informed Cyrway that Rite Aid had
decided to discontinue training Shorette for a store managership
due to Shorette's continued inability to learn the Rite Aid
computer system. Lucier asked Cyrway if he would be willing to
take Shorette on at the Augusta store as his key cashier, a lower-
paying position which required less computer proficiency. Cyrway
agreed. The next day Lucier met with Shorette to inform him that
Rite Aid could not "afford" to retain him any longer as an assistant
manager. After he was given the choice of resigning or being
demoted to key cashier, Shorette elected to resign.
In due course Shorette filed a five-count complaint
against Rite Aid in Maine superior court, which Rite Aid removed to
federal district court. The complaint alleged, inter alia, that
Rite Aid deliberately forced Shorette to resign because of his age,
in violation of the Age Discrimination in Employment Act (ADEA), 29
U.S.C. 621 et seq.. After discovery had been completed, Rite
Aid successfully moved for summary judgment on all counts and
Shorette appealed.
II
DISCUSSION
Shorette contends that he adduced adequate evidence to
generate a trialworthy issue as to whether Rite Aid forced him to
resign because of his age in violation of the ADEA. At all times
ADEA plaintiffs bear the burden of proving that their employer
discriminated against them on account of their age. See Hidalgo v.
Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir.
1997); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 723 (1st Cir.
1994). Hence, at the summary judgment stage Rite Aid could prevail
only if Shorette failed to adduce sufficient evidence from which a
rational factfinder could return a verdict in his favor, seeCelotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); American
Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 116 (1st Cir.
1998), without resorting to "conclusory allegations, improbable
inferences, and unsupported speculation," Medina-Munoz v. R.J.
Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).
Absent direct evidence of discriminatory intent, an ADEA
plaintiff may present circumstantial evidence pursuant to the
familiar three-stage, burden-shifting paradigm. See Woodman v.
Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). At the
first stage, the plaintiff employee must make a prima faciedemonstration that he: "(1) was at least forty years of age, (2)
met the employer's legitimate job performance expectations, (3)
experienced adverse employment action, and (4) was replaced by a
person with roughly equivalent job qualifications." Hidalgo, 120
F.3d at 332 (citation omitted). Once established, the prima faciecase raises a presumption that the employer was motivated by
discriminatory animus. Id. at 334. The burden of production then
shifts to the employer to articulate though not to prove a
legitimate nondiscriminatory basis for its employment decision. 
Id. Once the employer meets its limited burden of production, the
presumption of discrimination generated by the prima facie case is
stricken from the calculus, and the burden returns to the employee
to prove not only (1) that the reason the employer articulated for
the challenged employment action was a pretext or sham, but (2)
that its real reason was the employee's age. Id. at 335. Thus,
"[i]n pursuing [the third-stage] inquiry, we focus on whether the
employer believed that its proffered reason was credible. That is,
[plaintiff] must do more than cast doubt on the rationale proffered
by the employer, the 'evidence must be of such strength and quality
as to permit a reasonable finding that the . . . [termination] was
obviously or manifestly unsupported.'" Ruiz v. Posadas de San Juan
Assocs., 124 F.3d 243, 248 (1st Cir. 1997) (emphasis added)
(citations omitted).
A. Direct Evidence of Discriminatory Animus
Shorette maintains that various remarks by Rite Aid
managers amounted to direct evidence of Rite Aid's age-based
animus. First, around the time Rite Aid acquired LaVerdiere,
Shorette's district manager, Roland Hughes, asked Shorette how old
he was and when he planned to retire. Assuming as much, this is
not only a textbook example of an isolated remark which
demonstrates nothing, but Shorette was not able to state whether
Hughes made the statement before or after the Rite Aid takeover. 
Consequently, it is impossible to impute the remark to Rite Aid. 
Moreover, even assuming the remark was made after the Rite Aid
takeover, Shorette adduced no evidence that Hughes had authority to
determine whether Shorette was to be retained by Rite Aid, nor that
Hughes played any role in the decision to demote Shorette to key
cashier. See Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 6 n.8
(1st Cir. 1998) (noting that "stray remarks in the workplace . . .
, statements by nondecisionmakers, or statements by decisionmakers
unrelated to the decisional process itself" normally are
insufficient to prove employer's discriminatory animus) (citation
omitted); Medina-Munoz, 896 F.2d at 10.
Second, Wayne Cyrway twice advised Shorette and his wife: 
"[Y]ou have a perfect case of age discrimination, and you'd be
crazy not to pursue it." Shorette insists that these statements
support a rational inference that Cyrway had been privy to Rite
Aid's decisionmaking processes and enabled Cyrway to acquire some
undisclosed information regarding the alleged discriminatory
rationale which motivated Rite Aid to demote Shorette. We
conclude, however, that Shorette adduced insufficient evidence to
permit the attribution of Cyrway's remarks to Rite Aid.
In Connell v. Bank of Boston, 924 F.2d 1169 (1st Cir.
1991), a bank officer attested that the defendant bank had intended
to eliminate more senior employees than younger employees during a
planned reduction-in-force. We identified three reasons for
holding the evidence insufficient to withstand the bank's motion
for summary judgment. First, the plaintiff had adduced no evidence
that the affiant had participated in the bank's decisionmaking
process with respect to the reduction-in-force. Second, the
plaintiff offered no other specific evidence as to how the affiant
might have learned the true intent of the bank's decisionmakers. 
Finally, in contravention of Federal Rule of Evidence 701, the
affiant, a lay witness, testified to his personal opinion on the
ultimate legal issue in the case whether the bank acted with
discriminatory intent. Id. at 1177-78 & n.7.
The remark attributed to Cyrway is similarly flawed.
Cyrway repeatedly disavowed any participation in Rite Aid's
decisions to employ or discharge store managers, and in its
decision to demote Shorette. As one might expect, the individual
store managers had authority over their respective stores and
staffs, but made neither company-wide policy nor employment
decisions regarding other store managers. Instead, Cyrway simply
reported Shorette's progress, then learned of Rite Aid management
decisions after the fact. Thus, absent any evidentiary basis for
inferring that Cyrway took part in meetings or discussions at a
decisionmaking level, Shorette would have the jury indulge in
speculation. See Hidalgo, 120 F.3d at 338 (in proving an ADEA
claim, "[o]ptimistic conjecture . . . or hopeful surmise will not
suffice"); Medina-Munoz, 896 F.2d at 8. Even viewed most favorably
to Shorette, however, this evidence strongly suggests that Cyrway's
remarks simply represented an uninformed lay judgment that Shorette
might be able to present a circumstantial case of discriminatory
animus. Absent any suggestion or evidence that he was an expert on
employment discrimination claims, Cyrway's lay opinion as to
whether the circumstantial evidence suggested that Rite Aid
harbored a discriminatory animus the ultimate legal issue in the
case in all likelihood would have been inadmissible at trial. 
See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d
668, 681 (1st Cir. 1994) (noting that, "[u]nder [Federal] Rule [of
Civil Procedure] 56(e), affidavits supporting or opposing summary
judgment must set forth facts that would be admissible inevidence") (emphasis added).
B. Indirect Evidence of Discriminatory Animus
Absent direct evidence of discriminatory intent, Shorette
was forced to resort to circumstantial evidence. For present
purposes we assume arguendo (albeit dubiously) that Shorette
established a prima facie case. Further, Rite Aid plainly
articulated a nondiscriminatory reason for demoting Shorette: his
inability to achieve adequate computer proficiency. Thus, we focus
on whether Shorette adduced sufficient evidence from which a
rational factfinder could have inferred both that Rite Aid's
articulated reason was a pretext, i.e., "obviously or manifestly
unsupported," Ruiz, 124 F.3d at 248, and that its real reason for
demoting Shorette was an age-based animus. See Hidalgo, 120 F.3d
at 335.
The patchwork of circumstantial evidence presented by
Shorette fails to limn pretext, let alone discriminatory intent. 
On the other hand, the principal witnesses for Rite Aid 
Pattershall and Cyrway described in great detail Shorette's
inability to develop even minimal computer proficiency after six
months of intensive on-site training, and hence his inability to
perform core job functions required of all Rite Aid store managers. 
Nor did Shorette adduce competent evidence to rebut these
assessments of his computer aptitude. Although Shorette disputed
these assessments, his personal opinion regarding his own job
qualifications is not sufficiently probative on the issue of
pretext. See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir.
1997) ("The inquiry into pretext centers upon the employer's
beliefs, and not the employee's own perceptions of his
performance."); Ost v. West Suburban Travelers Limousine, Inc., 88
F.3d 435, 441 (7th Cir. 1996) ("It is well settled, however, that
a plaintiff's own opinions about her work performance or
qualifications do not sufficiently cast doubt on the legitimacy of
her employer's proffered reasons for its employment actions."); 
Evans v. Technologies Applications & Serv. Co., 80 F.3d 954,
960-61 (4th Cir. 1996) ("'It is the perception of the decision
maker which is relevant,' not the self-assessment of the
plaintiff.") (citation omitted); Shapolia v. Los Alamos Nat'l Lab.,
992 F.2d 1033, 1039 (10th Cir. 1993) (same). The record contains
no evidence whatsoever that Rite Aid ever believed that Shorette
had acquired adequate computer skills.
Shorette nevertheless attempts to bootstrap by relating
every instance in which he believes he received less favorable
treatment than other former LaVerdiere store managers. For
example, he contends that (1) Rite Aid sabotaged his computer
training from the outset by installing an obsolete computer in the
Fairfield store, while equipping other former LaVerdiere stores
with new computer systems; (2) he was the only LaVerdiere store
manager over age 60, and the only one who was "demoted" to assistant
manager; (3) the demotion violated Rite Aid's policy of not hiring
an assistant manager until it had a specific store managership
available; and (4) Rite Aid did not provide him with a permanent
engraved name tag, even though its policy was to provide them to
managers and assistant managers. These contentions are unavailing,
however, since the challenged actions are entirely compatible with
the nondiscriminatory rationale offered by Rite Aid. See Goldmanv. First Nat'l Bank of Boston, 985 F.2d 1113, 1120 (1st Cir. 1993)
(noting that ADEA plaintiff could not rely solely on employer
conduct for which there was an age-neutral explanation).
First, Rite Aid slated the Fairfield store for closure
because it was located right next to its newly constructed Rite Aid
outlet, for which Rite Aid had hired a manager prior to the
LaVerdiere takeover. Thus, Rite Aid reasonably could not be
expected to install a new computer in a store scheduled to close
within a matter of weeks. In all events, whatever probative force
this evidence may have is greatly outweighed by the subsequent
transfer of Shorette to the Rite Aid stores in Augusta and
Waterville, where he was provided with more than six monthstraining on a new computer system.
Second, notwithstanding the record citations in
Shorette's appellate brief, see Fed. R. App. P. 28(a)(4), he failed
to adduce competent evidence that he was either the only former
LaVerdiere store manager whose store was closed after the takeover,
or the only one Rite Aid temporarily "demoted" to assistant manager. 
Rather, Shorette testified that he was "the only one [viz.,
LaVerdiere store manager] in the Waterville area that was 60 years
old or older" who was demoted. (Emphasis added.) This tiny
statistical sampling proves too little, however. See, e.g.,
LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 849 (1st Cir. 1993)
(noting that, in disparate-treatment ADEA case, "'a small
statistical sample carries little or no probative force to show
[age] discrimination'") (citation omitted); see also DeNovellis v.
Shalala, 135 F.3d 58, 65 (1st Cir. 1998) (same). Nor is there
other evidence of pertinent company-wide statistics.
Third, the alleged Rite Aid policy of hiring manager
trainees only when a specific store-managership opened up is a red
herring, since the LaVerdiere takeover presented an entirely
different scenario: the need to close one store and thereby
eliminate one store-managership. That is to say, Shorette was not
"hired" as an assistant manager, but merely reassigned on a
temporary basis due to the Fairfield-store closure. Shorette
adduced no evidence of any company policy for dealing with that
distinct eventuality, nor is it in any sense unreasonable or
suspect that Rite Aid would assign a displaced store manager to an
assistant-managership on a temporary basis until another store-
managership became available. 
Fourth, even assuming that the failure to provide
Shorette with a name tag could support an attenuated inference that
Rite Aid knew ab initio (i.e., before Shorette's inability to
develop the required computer skills became known) that it planned
eventually to force him out of the company because of his age, such
a lapse is equally consistent with a nondiscriminatory intent. For
example, because the Fairfield store was closing, and Shorette was
about to embark on a transitory reassignment, it would be entirely
reasonable to defer the issuance of a permanent name tag until
Shorette once again could be appointed a permanent manager. 
Indeed, more fundamentally Shorette presented no evidence from
which it might be inferred that the failure to issue him a name tag
during the LaVerdiere takeover was anything other than an
oversight, much less an intentional discriminatory act.
Shorette points also to evidence that Rite Aid
contemporaneously hired younger persons as store managers (e.g.,
the manager of its new Fairfield Rite Aid store), or as manager
trainees in the Augusta store. Importantly, however, Rite Aid had
hired the manager of its new Fairfield Rite Aid before the
LaVerdiere takeover, and plainly was under no obligation to offer
that store-managership to Shorette. See Pages-Cahue v. Iberia
Lineas Aereas de Espana, 82 F.3d 533, 538-39 (1st Cir. 1996)
(employers have no obligation under ADEA to dismiss younger worker
so as to create job opening for older plaintiff). 
Shorette's anecdotal evidence that Rite Aid hired two
manager trainees after the LaVerdiere takeover is flawed as well. 
That these two manager trainees were in their 20's and 30's reveals
nothing statistically meaningful about Rite Aid's company-wide
hiring practices. For all the record discloses, these two trainees
may have been the only young persons Rite Aid hired during this
period. See Goldman, 985 F.2d at 1119 (such anecdotal evidence
does not give rise to an inference that older employees were
"disproportionately affected" by an employer's actions, "much less
that age discrimination motivated their dismissal"); see alsoLeBlanc, 6 F.3d at 848-49 (noting various flaws and lapses in ADEA
plaintiff's sketchy statistical information). Nor did Shorette
attempt to show that either of the manager trainees went on to
become a store manager, thereby displacing him, see supra note 3,
nor adduce any evidence that either trainee was either equally or
less proficient than Shorette in operating the Rite Aid computer
system, thus equally or less qualified for a store-manager
position. See Testerman v. EDS Tech. Prods. Corp., 98 F.3d 297,
305 (7th Cir. 1996) (noting that such evidence might be probative
of pretext); Hidalgo, 120 F.3d at 332 (noting that fourth prong of
prima facie case requires plaintiff to prove that "[he] was
replaced by a person with roughly equivalent job qualifications").
Finally, Shorette argues that Rite Aid failed to abide by
its established policy contemporaneously to document trainees' 
deficiencies in formal Trainee Progress Reports, and instead had
Pattershall and Cyrway write up their assessments of his computer
skills as informal notes after Shorette brought suit. See, e.g.,
Futrell v. J.I. Case, 38 F.3d 342, 349 (7th Cir. 1994) (employer's
failure to follow contemporaneous procedure, and later attempts to
make it falsely appear that its reasons predated its employment
action, may be evidence of discriminatory intent). From this
premise, Shorette would have a factfinder infer that Rite Aid,
after the fact, manufactured its allegation that he lacked the
requisite computer skills. 
The record fails to bear out Shorette's premise. Rather,
Shorette's counsel asked Rite Aid District Manager Gilman whether
"Rite Aid has a formal warning notice and corrective review," to
which Gilman replied: "Yes." Gilman then admitted that the only
documentation he had seen concerning Shorette's computer training
were the "notes" of Pattershall and Cyrway. When pressed by
Shorette's counsel to deny that Pattershall and Cyrway prepared
these notes after Shorette filed suit, Gilman responded that he did
not know when the notes were prepared. Thus, the record fails to
disclose whether Rite Aid's so-called "formal warning notice and
corrective review" procedure was mandated in all instances, or even
in such cases as Shorette's. More importantly, the mere
suggestion to Gilman that the Pattershall and Cyrway "notes" were
not made contemporaneously with Shorette's training is no
substitute for evidence that the notes were produced after Shorette
filed suit. Thus, once again Shorette would have the factfinder
rely upon "unsupported speculation." See Medina-Munoz, 896 F.2d at
8.
III
CONCLUSION
As Shorette failed to adduce either direct or
circumstantial evidence which would enable a rational jury to find
in his favor, the district court judgment must be affirmed; coststo appellee.
SO ORDERED.