**Eladio Seda SOTO, Plaintiff,**

v.

**CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, Defendant.**

**No. CIV. 95–2299(RLA).**

United States District Court,
D. Puerto Rico.

Sept. 23, 1999.

Eric Rivera Cruz, Hato Rey, PR, for Plaintiff.

Jorge L. Capo–Matos, O'Neill & Borges, Hato Rey, PR, for Defendant.

### ORDER DISMISSING COMPLAINT

ACOSTA, District Judge.

Pending before the Court is defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints' (CPB), motion for summary judgment (docket No. 29), to which plaintiff, Eladio Seda Soto (Seda) has filed an opposition (docket No. 30).[1] For the reasons set forth below, defendant's Motion for Summary Judgment is hereby **GRANTED** in its entirety.

### I. BACKGROUND

This is an action originally filed by Seda before the Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, against CPB, for alleged age discrimination and wrongful discharge. Plaintiff requests in excess of $200,000 in damages, back pay, front pay, costs and attorney's fees.

The complaint alleges that in May, 1995, defendant discharged Seda because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Commonwealth of Puerto Rico Law No. 100 of June 30, 1959, as amended, ("Law No. 100"), 29 L.P.R.A. § 146, *et seq.* Plaintiff also alleges the dismissal was without just cause, in violation of the Commonwealth of Puerto Rico's wrongful discharge statute, Law No. 80 of May 30, 1976, as amended ("Law No. 80"), 29 L.P.R.A. § 185a, *et seq.*

The case was timely removed by CPB to this Court pursuant to the provisions of Section 1441 of Title 28, United States Code. Jurisdiction is predicated on a federal question, pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over the state claims arises under 28 U.S.C. § 1446(d).

Defendant's motion for summary judgment contains a Statement of Uncontested Material Facts ("Statement"), supported by the appropriate references to the specific evidence on file, pursuant to Local Rule 311.12.

Based on the facts asserted in the Statement, defendant's motion for summary judgment requests dismissal of the complaint for the following reasons: (1) plaintiff failed to file a charge with the Equal Employment Opportunity Commission

---

1. *See also* defendant's reply to plaintiff's opposition (docket No. 31) and plaintiff's surreply thereto (docket No. 32).

("EEOC")as required by the ADEA as a prerequisite for a judicial claim; (2) plaintiff has failed to present a *prima facie* case under the ADEA, since he did not meet CPB's legitimate job performance expectations, and after his dismissal was not replaced by a new employee; (3) defendant dismissed Seda for just cause and legitimate, non discriminatory business reasons, specifically the elimination of his position as mission accountant; (4) CPB provided plaintiff with a voluntary termination payment in excess of any amount which could be due if the dismissal was without just cause, as required by Law No. 80, thereby barring any subsequent Law No. 80 claim.

Plaintiff, on the other hand, did not file a separate statement of material facts as to which he contends exists a genuine issue to be tried, properly supported by specific reference to the record, as mandated by Local Rule 311.12.

Plaintiff's opposition and surreply simply argue that material factual disputes exist because: (1) plaintiff's prior demotion from distribution center manager to mission accountant in April 1994, was unjustified and he was used as a "scapegoat" to cover-up defendant's inefficient operations and/or Seda's supervisor's negligent performance; (2) the April 1994 demotion was part of a scheme to induce him to resign and/or subsequently dismiss him upon the elimination of the mission accountant position; (3) the real reason defendant wanted to terminate plaintiff's employment was to save approximately $30,000 per year (Seda's salary); and (4) the fact that defendant provided Seda with a "voluntary" termination payment which exceeds Law No. 80, is irrelevant to plaintiff's entitlement to a Law No. 80 indemnity payment, if the dismissal was without just cause.

Plaintiff also requests that, pursuant to Fed.R.Civ.P. 56(f), if the Court is "inclined" to grant summary judgment, that he be permitted to conduct additional discovery to unveil the evidence which will support his factual contentions. We begin by addressing this request, which we find has no merit.

## II. FED.R.CIV.P. 56(f)

First, we must assume that at the time plaintiff filed his complaint he had a reasonable factual basis on which to support his claim. Further, plaintiff was forewarned as to defendant's affirmative defenses and theories as soon as he received CPB's answer to the complaint. In the Joint Initial Scheduling Memorandum, plaintiff represented that he would notify defendant with interrogatories and a request for production of documents, which he never did. At the Initial Scheduling Conference held eleven (11) months after the complaint was filed, further discovery was stayed pending defendant's filing of its announced motion for summary judgment. *See* Minutes of Initial Scheduling Conference, docket No. 16.

It was only when defendant's summary judgment motion was notified pursuant to the undersigned's Standing order that plaintiff belatedly pleaded that he was under a disadvantage because of his lack of access to company records. *See* Opposition at p.3.

Rule 56(f) of the Federal Rules of Civil Procedure states the following:

"(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

"Fed.R.Civ.P. 56(f) provides a method of tolling time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." *Resolution Trust v. North Bridge Assoc.*, 22 F.3d 1198, 1203

(1st Cir.1994). This does not mean, however, that Rule 56(f) has no effect or that it is available to rescue a litigant who acts lackadaisically. Use of the rule requires meeting several benchmarks, as well as due diligence in pursuing discovery.

Ordinarily, a party who wishes to conduct discovery before the court acts on a summary judgment motion should present timely affidavits under Rule 56(f); something plaintiff failed to do in this case. *See Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993) (plaintiff was not entitled to discovery before court ruled on motion for summary judgment where plaintiff failed to file any affidavit specifying what facts further discovery might unveil, its relevance to issues pleaded, or how discovery might unveil its relevance to issues pleaded, or how it might overcome facially time barred complaint); *Resolution Trust*, 22 F.3d at 1204 (while an attorney may provide the affidavit, he must provide first hand knowledge of the facts asserted); *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992)(unverified assertion by counsel which simply constitutes advocacy, does not suffice for evidence or facts required to grant continuance).

Furthermore, to satisfy Rule 56(f), a party must meet two additional requirements: (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trial-worthy issue and (2) demonstrate good cause for failure to have conducted discovery earlier. *Mass. School of Law at Andover v. American Bar*, 142 F.3d 26, 43–45 (1st Cir.1998); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 531 (1st Cir.1996) (movant must articulate plausible basis for belief that discoverable materials exist which would raise a trial-worthy issue.); *R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir.1994), *appeal after remand*, 88 F.3d 49 (1st Cir.1996) (the party seeking additional time for discovery must show that the facts sought will, if obtained, suffice to engender an issue both genuine and material); *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 235 (1st Cir.1993); *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991).

In this case, Seda failed to identify any facts he would expect to discover. Further, he did not specify what information he had reasonable grounds to expect would be disclosed which would generate genuine and material disputes of fact.

Plaintiff has not provided minimal supporting factual allegations, and has not supplemented that deficiency. Thus, he has not made the slightest showing that his opposition is meritorious. *See Néstor Colón Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 39 (1st Cir.1992) ("Mere conclusory allegations, standing alone, are not enough; and it is only after stating a valid claim that a plaintiff can insist upon a right to discovery. If this were not so, a party entirely lacking in a cause of action could sue first and then 'fish' to see if he could discover a cause of action") *Id.* at 39 (internal citations omitted).

Finally, plaintiff has not shown cause for his failure to advance his quest for discovery. Undoubtedly, plaintiff had ample opportunity for adequate discovery but failed to engage in same. We are not inclined to reward such lack of diligence. *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44–45 (1st Cir.1998). Therefore, we deny plaintiff's request to conduct further discovery.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, summary judgment must be granted where the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. As repeatedly stated, the function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodríguez v. Puerto Rico*

*Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). It allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

Summary judgment may be appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact..." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the non-moving party must demonstrate the existence of a trial-worthy issue as to some material fact." *Cortes Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez*, 110 F.3d at 178, and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

Here, the emphasis of plaintiff's arguments has been primarily to cast doubt as to the reasonableness of Seda's demotion in April 1994, which occurred more than a year before his dismissal. He attempts to do so by questioning the amount of complaints received pertaining to the distribution center's operations under Seda's supervisor and imputing responsibility to his own supervisor for poorly supervising him. From this, plaintiff urges the court to find there are material factual controversies as to the legitimate non-discriminatory reasons for Seda's discharge. To plaintiff's

misfortune, the record does not support any reasonable inference of age discrimination in connection with CPB's actions.

■ In a wrongful discharge case such as this one, Seda bears the ultimate burden of proving that he would not have been terminated but for his age. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Jiménez v. Bancomercio de Puerto Rico*, 174 F.3d 36 (1st Cir.1999); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico*, 152 F.3d 17 (1st Cir.1998).

"On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is 'merely colorable' or 'not significantly probative.' " *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986)). The nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Thus, "[s]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

Even in cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the nonmoving party rests merely upon unsupported allegations. *Ayala–Gerena*, 95 F.3d at 95. In such cases, courts in this circuit found summary judgment an appropriate mechanism to dispose of age discrimination cases on the merits. *See, Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8 (1st Cir.1998); *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111 (1st Cir. 1998); *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243 (1st Cir.1997); *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328 (1st Cir.1997); *Pages–Cahue*

*v. Iberia Líneas Aéreas de España,* 82 F.3d 533 (1st Cir.1996); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8–10 (1st Cir.1990); *Vega v. Kodak Caribbean, Ltd.,* 807 F.Supp. 872 (D.P.R.1992), *aff'd.* 3 F.3d 476, 480–481 (1st Cir.1993); *Domínguez v. Eli Lilly & Co.,* 958 F.Supp. 721 (D.P.R.1997) *aff'd* 141 F.3d 1149 (1st Cir.1998); *De Arteaga v. Pall Ultrafine Filtration Corp.,* 673 F.Supp. 650 (D.P.R. 1987), *aff'd* 862 F.2d 940 (1st Cir.1988); *Menzel v. Western Auto Supply,* 662 F.Supp. 731, 745 (D.P.R.1987) *aff'd.* 848 F.2d 327 (1st Cir.1988).

## IV. LOCAL RULE 311.12

### A. Standard

In this district, Local Rule 311.12 was promulgated to assist the Court in dealing with summary judgment mechanics. It requires the moving party to file a separate statement, with specific references to the record, of material facts that it alleges are not at issue. The nonmoving party must also file a separate statement stating the material facts that are allegedly at issue. On repeated occasions this Court has stated that compliance with Rule 311.12 is critical, since the Court will only consider the facts alleged in the above-mentioned statements when entertaining the movant's arguments. *Rivera de Torres v. Telefónica de Puerto Rico,* 913 F.Supp. 81 (D.P.R.1995).

This Court has frequently required compliance with Local Rule 311.12, even when failure to comply has resulted in the dismissal of plaintiff's employment discrimination complaint. *Ortiz Rodríguez v. Banco Popular de Puerto Rico,* 27 F.Supp.2d 309 (D.P.R.1998).

> Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents the recurrent problem of ferreting through the record and the specter of district judges being unfairly sand-

bagged by the unadvertised factual issues.

*Domínguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 727 (D.P.R.1997) (quoting *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930–31 (1st Cir.1983))(internal citations omitted); *Rivera Rosario v. Granada Mills, Inc.,* 142 F.R.D. 50 (D.P.R.1992). Insistence on compliance with the rule and enforcement of the consequences for noncompliance has consistently been endorsed by our Circuit. *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86 (1st Cir.1996); *Rivas v. Federación de Asociaciones Pecuarias,* 929 F.2d 814, 816 n. 2 (1st Cir.1991); *Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 19 (1st Cir.1989); *Alvarado–Morales v. Digital Equip. Corp.,* 843 F.2d 613, 615 (1st Cir.1988).

Moreover, "[w]ithout specific references to the Record, the list of uncontested and contested facts does not serve its purpose. The court would have to continue to ferret through the record, read all the answers to the interrogatories, study all the attached documents, and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Id.*

Accordingly, failure to comply with the "anti-ferret rule" has severe consequences. Indeed, as *Stepanischen* warns, "the failure to make specific references to the Record would, where appropriate, be grounds for judgment against the party." *Domínguez,* 958 F.Supp. at 727 (quoting *Stepanischen,* 722 F.2d at 931).

### B. Noncompliance by Plaintiff

We have searched through plaintiff's opposition to defendant's motion for summary judgment, as well as his surreply, and nowhere is there any indication of plaintiff's effort to comply with Local Rule 311.12. Rather, plaintiff simply attempts to address defendant's legal arguments and cast doubt, through a series of allegations, as to the veracity of the reasons proffered to explain Seda's initial demotion

and his subsequent dismissal, approximately a year later.

Accordingly, the Court hereby admits the properly supported statements of uncontested facts presented by defendant. Such facts as are pertinent to the disposition of the case follow.

## V. FACTS

CPB is a corporation organized to perform activities on behalf of The Church of Jesus Christ of Latter–Day Saints. CPB has a local office in Puerto Rico. All of the administrative matters related to the Church's activities in the Caribbean Area are coordinated from the central office in Puerto Rico.

Seda was hired to work as an accountant for CPB on August 23, 1982, when he was 35 years of age. During the period of his employment with CPB, Seda held several positions. In November of 1989, Seda was transferred to the position of distribution center manager responsible for the operation and organization of the inventory in the warehouse and the distribution and shipment of CPB's materials throughout the Caribbean.

In March and April of 1994, Seda's supervisor, Angel M. Negrón ("Negrón"), received several complaints from various church affiliates from the Caribbean islands, related to the inefficient operation of the distribution center managed by Seda. The complaints were particularly related to the tardiness of the shipments of materials and problems with back orders.

Also in April, 1994, Mr. Kris Christensen, manager of the Salt Lake distribution center came to Puerto Rico to evaluate the local distribution center's problems and identify actions to be taken to improve its operations. His visit resulted in a report, which identified various problems associated with the malfunctioning of the distribution center managed by Seda. According to the report, the principal problems with the center were the following: slow and late shipments; failure to follow-up on complaints from other offices; accounting problems caused by the billing of back orders with the rest of the original order; delay in the processing of orders; paying for a two-day freight service which CPB was not getting; problems with the ordering process from the Dominican Republic to Puerto Rico as outlined by a prior audit; delay in the input of orders into the computer system; the frustration of employees in their efforts to try to work with Seda and in Seda's lack of effort in trying to resolve their issues and concerns. The report was submitted to Donald L. Clark ("Clark"), the Director of Temporal Affairs for CPB in Puerto Rico and the Caribbean.

Thereafter, since Seda could not comply with the requirements of the distribution center manager position and had failed to properly manage the inventory in the warehouse, Seda was demoted to the position of mission accountant in accordance with Clark's and Negrón's recommendations.[2] Rubén Pomales, the finance manager, became Seda's immediate supervisor as mission accountant. Even though Seda was demoted, his salary of $3,568 per month was not reduced.

A mission accountant was in charge of the mission accounting transactions and was also responsible for the mission finances. During the time Seda was mission accountant, there were eight missions in the Caribbean area: Puerto Rico (1);

---

**2.** Contrary to the allegations made in plaintiff's opposition to the defendant's motion for summary judgment and his surreply, plaintiff specifically stated in his deposition that he did not consider that this demotion was motivated by his age. *See* Statement, lines 20–24 at page 71 of Seda's deposition. Moreover, Section II–A of plaintiff's legal theories in the Joint Initial Scheduling Memorandum (docket No. 14) lacks any assertion that the demotion was based on age discrimination animus. These admissions are fatal to plaintiff's attorney's advocacy in opposing the summary judgment motion. At any rate, any claim that the April, 1994 demotion was based on age discrimination reasons would be clearly time-barred.

Dominican Republic (3); Jamaica (1); Haiti (1); Trinidad–Tobago (1); and West Indies (1).

There was also a project accountant position in CPB. The project accountant was responsible for keeping accounting records of all construction and real property projects in the Caribbean according to CPB's policies and procedures. There were approximately twelve (12) to fourteen (14) projects in the Dominican Republic and two (2) to three (3) in the rest of the Caribbean.

Rafael Pedrosa had been the project accountant in Puerto Rico since June of 1988. As project accountant, Pedrosa was in charge of all the projects in the Caribbean and in Puerto Rico. He also was subject to supervision by the finance manager, Pomales.

In September of 1994, CPB's comptroller, Miguel A. Tenorio, began to consider the alternative of transferring all of the accounting responsibilities of the missions and projects located in the Dominican Republic to the finance department of the Dominican Republic service center, since they were being handled from the office in Puerto Rico.

In the week of September 26–30, 1994, H. Larry Hutchinson, the International Comptroller for CPB, visited the Dominican Republic and Puerto Rico administration offices and prepared a "Caribbean Area Trip Report." After reviewing, considering, and adopting the recommendations of this report, Clark and Tenorio concluded that the mission and project accounting responsibilities would be transferred to the Dominican Republic service center and that only one full-time employee would be needed in Puerto Rico to carry out the remaining accounting responsibilities for both the missions and projects for Puerto Rico and the rest of

the Caribbean, excluding the Dominican Republic.

As a result of this reorganization, the new job position in Puerto Rico was designated as "senior accountant". The newly created position consolidated the mission and the project accountant positions. The senior accountant would be responsible for the management of the finances of the missions and projects in Puerto Rico and the rest of the Caribbean, excluding the Dominican Republic.·

As part of the reorganization, a determination was made with respect to the person who was to occupy the senior accountant position. Tenorio and Pomales decided that Pedrosa was the most qualified person to occupy the position because (1) Pedrosa had vast knowledge of the project accounting responsibilities; (2) on numerous occasions, Pedrosa had also worked with the financing responsibilities of the missions while Seda, in contrast, had held the mission accountant position for only one year and was not familiar with project accounting functions; and (3) Pedrosa had received substantially better performance evaluations than Seda.[3]

On May 8, 1995, Pomales and Tenorio met with Seda and informed him of CPB's decision to reorganize and consolidate operations, create the senior accountant position, and terminate his employment. During that meeting, Pomales and Tenorio also informed Seda that he could continue working for CPB during a transitional period until he could find another job. However, the day after the meeting, that is, on May 9, 1995, Seda informed Pomales of his decision to leave immediately.

Notwithstanding Seda's decision to leave immediately, Clark decided to grant him a voluntary termination payment. Accordingly, on May 9, 1995, Seda received a

---

**3.** In fact, Seda had received a very poor performance evaluation as mission accountant. On a scale of 1 through 4, 4 being the lowest score and indicating a very poor performance, Seda had obtained an overall performance rating of 3.5, while Pedrosa's overall appraisal was 2.5. Indeed, as mission accountant, Seda never received a merit salary increase.

payment of $17,560.12. At the time of Seda's termination, there were at least four other CPB employees with salaries higher than Seda's. At the time of his termination, Seda and Pedrosa were 48 and 46 years of age, respectively. Finally, the record contains uncontroverted sworn statements by Clark, Pomales and Tenorio, the persons involved in the decision to choose Pedrosa over Seda for the senior accountant position, affirming they did not take into consideration the age of either of the employees in the decision-making process.

Seda never filed an age discrimination charge with the EEOC nor with the Antidiscrimination Unit of Puerto Rico Department of Labor and Human Resources. Yet it is uncontroverted, that at least since September of 1993, EEOC notices had been posted in the employees' lounge, informing employees of the illegality of age discrimination and advising them to contact the EEOC if they thought they were victims of discrimination. Notwithstanding this notice of the ADEA rights, Seda's first and only effort to challenge the dismissal was the filing of the present complaint on September 18, 1995.

## VI. DISCUSSION

### A. ADEA CLAIM

#### 1. Filing Requirements

In deferral states (states which have enacted employment discrimination laws), such as Puerto Rico, employees must file a charge of unlawful age discrimination in employment with the EEOC within 300 days "after the alleged unlawful practice occurred." 29 U.S.C. § 626(d); *American Airlines, Inc.,* 133 F.3d at 122. That is, as a prerequisite to the commencement of a civil action under the ADEA, an aggrieved employee must file an administrative charge with the EEOC and with the parallel state agency designated by law in deferral states. 29 U.S.C. §§·626(d) and 633(b); *Powers v. Grinnell Corp.,* 915 F.2d 34, 37 (1st Cir.1990).

■ It is undisputed that Seda never filed a claim with the Antidiscrimination Unit of the Department of Labor nor with the EEOC. Plaintiff argues that CPB waived its right to challenge plaintiff's failure to comply with the filing requirements of a charge at the EEOC by removing the case from local court to a federal district court. The exercise of defendant's right to remove the case to the federal district court, however, is no basis to hold that defendant waived its right to raise this appropriate defense under federal law.

We also reject as inapplicable to the case the doctrines of equitable estoppel and equitable tolling.

■ Equitable estoppel may be invoked when an employee is aware of his ADEA rights, but does not make a timely filing of a charge due to his reasonable reliance on his employer's deceptive conduct. *American Airlines,* 133 F.3d at 124, *Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 895 (1st Cir.1992); *Kale v. Combined Ins. Co. of America,* 861 F.2d 746, 752 (1st Cir.1988). Plaintiff has failed to allege such conduct here. Moreover, in this case, plaintiff has failed to file at any moment a charge with the EEOC and/or with the Antidiscrimination Unit of the Department of Labor and Human Resources.

■ Equitable tolling is appropriate when the plaintiff demonstrates "excusable ignorance" of his statutory rights. *American Airlines, Inc.,* 133 F.3d at 124; *Mercado–Garcia,* 979 F.2d at 896, *Kale,* 861 F.2d at 752. In this case, plaintiff at least had constructive knowledge of a statute outlawing age discrimination. Defendant posted EEOC notices at Seda's place of employment. The posting informed employees of the illegality of age discrimination and provided plaintiff constructive knowledge of his ADEA rights. Therefore, equitable tolling cannot excuse plaintiff's failure to file a charge with the EEOC. *Kale,* 861 F.2d at 752.

Since plaintiff did not comply with the statutory requirements for initiating a civil action under ADEA, defendant's motion for summary judgment dismissing plaintiff's ADEA claim is hereby GRANTED. *Castro v. United States*, 775 F.2d 399, 403 (1st Cir.1985).

Having dismissed plaintiff's ADEA claim for his failure to file a charge, we nonetheless address his claim on the merits.

### 2. Merits of the Claim

In relevant part, the ADEA prohibits an employer from discharging an employee because of his age. As previously stated, in a case such as this one, Seda bears the ultimate burden of proving that he would not have been terminated but for his age. *Cardona Jiménez v. Bancomercio Puerto Rico*, 174 F.3d 36 (1st Cir.1999); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico*, 152 F.3d 17, 24 (1st Cir.1998), *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1997). When the plaintiff has direct evidence of discriminatory animus, the case must be put to the jury without further ado. *Cardona Jiménez*, 174 F.3d at 40; *Alvarez–Fonseca*, 152 F.3d at 24.

Absent direct evidence of discriminatory intent, the familiar *McDonnell Douglas* burden-shifting framework governs. *Cardona Jiménez*, 174 F.3d at 40–41; *Shorette*, 155 F.3d at 12; *Alvarez–Fonseca*, 152 F.3d at 24; *Ruiz*, 124 F.3d at 247; *Serrano–Cruz*, 109 F.3d at 25; *Pages–Cahue*, 82 F.3d at 536; *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir. 1995); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under *McDonnell Douglas*, Seda must present a prima facie case of discrimination, that is, that he (1) was at least forty years of age; (2) met the employer's legitimate job expectations; (3) was fired; and (4) was replaced by a person with roughly equivalent job qualifications. *Cardona Jiménez*, 174 F.3d at 41; *Shorette*, 155 F.3d at 12; *Alvarez–Fonseca*, 152 F.3d

at 24; *Ruiz*, 124 F.3d at 247–248; *Hidalgo*, 120 F.3d at 332; *Pages–Cahue*, 82 F.3d at 536; *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476 (1st Cir.1993).

■ Once plaintiff meets this burden, a presumption of discrimination attaches, and CPB must articulate a legitimate non-discriminatory reason for his termination. *Cardona Jiménez*, 174 F.3d at 41; *Shorette*, 155 F.3d at 12, *Alvarez–Fonseca*, 152 F.3d at 24; *Ruiz*, 124 F.3d at 248; *Hidalgo*, 120 F.3d at 334; *Pages–Cahue*, 82 F.3d at 536.

Once defendant articulates a legitimate non-discriminatory reason, the presumption of discrimination vanishes and Seda must show by a preponderance of evidence both that CPB's reason was a pretext and that the real reason was age-based animus. *Cardona Jiménez*, 174 F.3d at 41; *Shorette*, 155 F.3d at 13, *Alvarez–Fonseca*, 152 F.3d at 24; *Ruiz*, 124 F.3d at 248; *Hidalgo*, 120 F.3d at 335; *Medina–Muñoz*, 896 F.2d at 8. In this summary judgment context, Seda, as the nonmovant, must show evidence sufficient for a fact finder to reasonably conclude that CPB's decision to terminate him was driven by a discriminatory animus. *Le Blanc v. Great American Ins. Co.*, 6 F.3d 836, 843 (1st Cir.1993).

### a. Direct Evidence of Discriminatory Animus.

Seda failed to present any facts which would amount to direct evidence of CPB's age-based animus. In fact, Seda failed to present any affidavits and other probative and admissible evidence setting forth a genuine issue as to any material fact. The responses to the motion for summary judgment filed by plaintiff are conclusory allegations, improbable inferences, speculations and conjectures that are not duly and properly supported by admissible evidence. The nonmovant bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

The record in this case lacks any direct evidence demonstrating that Seda was a victim of age discrimination. Seda has failed to submit even a sworn affidavit presenting facts attesting to age discrimination. Rather, he appears to rely wholly on the general conclusory allegations contained in his complaint and in the responses to defendant's motion for summary judgment. Such evidence cannot withstand a motion for summary judgment. *See* Fed.R.Civ.P. 56(c); *see also Mesnick,* 950 F.2d at 822; *LeBlanc, supra,* 6 F.3d at 842.

### b. Indirect Evidence of Discriminatory Animus.

Absent direct evidence of discriminatory animus, our analysis is governed by the familiar framework enunciated in *McDonnell Douglas.*

### (i) *Prima Facie* case

This court finds that Seda failed to make out a *prima facie* case of age discrimination since he did not meet the second and fourth elements. The evidence presented by defendant demonstrates that Seda's performance as a mission accountant was poor. Moreover, in his previous job position, as a distribution center manager, Seda's performance created problems with the operation and management of the distribution center. As a result, on April 1994, he was demoted from distribution center manager to the mission accountant position.

■ Since Seda performed his job duties as a mission accountant in a poor manner, undoubtedly he was not going to be able to perform the senior accountant duties in a satisfactory way since the new position consolidated the mission accountant and the project accountant positions. The evidence on record shows that the project accountant, Rafael Pedrosa, had a better evaluation and had knowledge of the mission accounting responsibilities. Seda was not qualified for the position he held, much less for the senior accountant

position. Seda failed to provide any evidence that his job performance was up to CPB's legitimate job expectations.

■ The fourth requirement is not met in the present case since Seda was not replaced by another person. Instead, Seda's job position was eliminated as well as the project accountant position.

No person was hired or reassigned to perform plaintiff's duties. Instead, Pedrosa was assigned to perform Seda's duties in addition to his own duties. CPB had no duty to transfer or relocate Seda to another position within the organization. *Pages–Cahue,* 82 F.3d at 538–539; *LeBlanc,* 6 F.3d at 846; *Holt v. Gamewell Corp.,* 797 F.2d 36, 38 (1st Cir.1986). Moreover, the record in this case is devoid of evidence that demonstrates that Seda met defendant's legitimate job performance expectation for the position of senior accountant, that defendant had a continuing need for the same services and that they subsequently were performed by a person with the same or similar qualifications as plaintiff. *See Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 26 (1st Cir.1998).

The mere fact that some of Seda's duties were assumed by Pedrosa in addition to Pedrosa's other duties is insufficient to demonstrate that Seda was replaced after his termination. Accordingly, plaintiff has failed to meet the fourth element of the *McDonnell Douglas* framework. *Le Blanc v. Great American Insurance Co.,* 6 F.3d 836, 844 (1st Cir.1993); *Fabregas v. I.T.T. Intermedia, Inc.,* 13 F.Supp.2d 225 (D.P.R.1998).

Thus, plaintiff has failed to establish a *prima facie* case of age discrimination.

This court grants defendant's summary judgment dismissing Plaintiff's ADEA claim for his failure to establish a *prima facie* case. However, this court also grants defendant's motion for summary judgment dismissing plaintiff's ADEA claim because plaintiff has failed to pres-

ent sufficient evidence from which a rational fact finder could have inferred both that defendant's legitimate business reason for Seda's termination was a pretext, and that the real reason for his termination was an age-based animus.

### (ii). Pretext

■ In this case, CPB articulated a legitimate nondiscriminatory reason for terminating Seda: the elimination of the mission accountant position which plaintiff held.

The evidence shows that CPB reorganized the management and operation of the missions and projects located in Puerto Rico and the Caribbean. A senior accountant position was created in the Dominican Republic service center responsible for the finances of the missions and projects located there. Similarly, a senior accountant position was created in Puerto Rico to manage the finances of the missions and projects in Puerto Rico and the rest of the Caribbean, excluding the Dominican Republic.

As a result of its reorganization and the creation of a new senior accountant position, the mission accountant and the project accountant positions were both eliminated. Undoubtedly, the creation of the new senior accountant position was related to CPB's normal operations.

We find that CPB was able to articulate a legitimate nondiscriminatory reason for Seda's discharge. *See, Ruiz,* 124 F.3d at 248; *Hidalgo,* 120 F.3d at 334–335. We therefore turn to the final step of the *McDonnell Douglas* framework.

■ In pursuing this inquiry, Seda must have done more than cast doubt on the rationale proffered by CPB. Instead, the evidence must be of such strength and quality as to permit a reasonable finding that the employer's decision to terminate the employee was motivated by age. *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993); *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 n. 3

(1st Cir.1991); *Le Blanc, supra,* 6 F.3d at 843. We find that Seda failed to produce evidence sufficient to meet his ultimate burden of persuasion of demonstrating pretext, let alone discriminatory intent. While we find that Seda has failed to meet his ultimate evidentiary burden, we present his evidence in detail in our responsibility to consider the facts in the light most favorable to him.

Plaintiff alleges that discriminatory intent existed since April 1994, when Seda was demoted. He also contends that the demotion was motivated by a desire to use him as a "scapegoat" and to cover up the inefficient operation of the distribution center, and his supervisor's (Negrón) negligent supervision. Plaintiff further alleges that his dismissal, twelve (12) months after his demotion, was motivated by a desire to save money due to his alleged high salary.

■ Apart from the speculative nature of these allegations, none can reasonably justify an inference of age discrimination. An employer's signaling an employee as responsible for the operational deficiencies of others is not by itself evidence of discrimination based on age. *Cardona Jiménez,* 174 F.3d 41–42. *See* also *Phipps v. Gary Drilling Co., Inc.,* 722 F.Supp. 615 (E.D.Cal.1989); *Murre v. A.B. Dick Co.,* 625 F.Supp. 158 (N.D.Ill.1985) (Age discrimination claimant cannot raise triable issue of discrimination by arguing about fairness of employer's evaluation of work performance, even with testimony of coworkers or other employees of the defendant's employer); *Schultz v. General Elec. Capital Corp.,* 37 F.3d 329 (7th Cir. 1994)(In age discrimination action, employee failed to show that employer's proffered nondiscriminatory reason for his termination, i.e., poor performance, was pretextual; employee's self-serving statements were insufficient to show that manager lied about his belief that employee was poor performer, manager's treatment of other poor performers did not indicate age discrimination or that proffered reason for

termination was a lie.) *See also, Rodri-guez–Cuevas v. Wal–Mart Stores, Inc.*, 181 F.3d 15 (1st Cir.1999)(The questioning of the accuracy of the evaluations or the timing of same is insufficient to show that the legitimate proffered reason for demoting an employee was actually a pretext for unlawful discrimination. The courts may not sit as super personnel departments assessing the merits—or even the rationality—of employers' non discriminatory business decisions).

██ Further, the mere allegation that an employer terminated an employee for economic reasons, i.e. to save money on salary, is an insufficient basis to infer discrimination on the basis of age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (Age and years of service are analytically distinct, so that employer could take account of one while ignoring the other, and decision based on years of service is thus not necessarily age-based; firing employee in order to prevent pension benefits from vesting does not, without more, violate ADEA); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144 (5th Cir.1995) (Fact that employee's high salary or fast-approaching eligibility for retirement benefits motivated termination decision would not be sufficient alone to support finding of age discrimination, as ADEA prohibits discrimination on basis of age, not on the basis of salary or seniority); *Woroski v. Nashua Corp.*, 31 F.3d 105 (2nd Cir. 1994)(ADEA does not prohibit employer from acting out of concern for excessive costs, even if they arise from age-related facts, such as fact that employees with long seniority command higher salary and benefits than new hire); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir.1994) (Firing employee solely to reduce salary costs is not age discrimination; compensation is typically correlated with age, but relation is not perfect).

Thus, Seda's argument is speculative in its nature and consequently meritless. The oldest employee of an employer does not necessarily earn the highest salary in the company. It is axiomatic that more is required than mere conclusory allegations and unsupported conjecture. *See Le-Blanc*, 6 F.3d at 841; *Goldman*, 985 F.2d at 1116. Moreover, CPB presented uncontroverted evidence that at least four other employees had higher salaries than Seda. According to plaintiff's own testimony, this fact is the only evidence he has to support his age discrimination claim. However, that fact in itself is insufficient to support a finding or inference of age discrimination. Moreover, such evidence does not suggest that there was an age-related reason for plaintiff's termination.

Accordingly, plaintiff has failed to present probative evidence to show that defendant's articulated reason for his termination, *i.e.* the elimination of his job position, was a pretext to cover up the real reason of age discrimination. In fact, the admissible evidence presented by defendant demonstrates that the mission accountant and the project accountant positions were both eliminated, that the new senior accountant positions were created in Puerto Rico and in the Dominican Republic respectively; and that based on the performance evaluations, Pedrosa was a better qualified person to occupy the senior accountant position.

Finally, the Court finds the fact that at the time of Seda's termination, Pedrosa, who became the senior accountant, was forty six (46) years old, while Seda was forty eight (48) years old, is of insufficient probative value to justify an inference by a reasonable factfinder of pretext for discriminatory age animus. *O'Connor v. Consolidated Coin Caterers*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)(age discrimination inference cannot be drawn from replacement of one worker with another worker insignificantly younger).

The evidence adduced by plaintiff could not convince a trier of fact that defendant unlawfully discriminated on the basis of age. The circumstances of this case, based on the evidence of record, are not

reasonably susceptible to an inference that defendant discharged Seda because of unlawful age discriminatory animus.

Therefore, this Court **GRANTS** defendant's motion for summary judgment and hereby **DISMISSES** plaintiff's ADEA claim.

## B. Puerto Rico Law No. 100

The Court, in the exercise of its discretion, has retained supplemental jurisdiction over the pendent state law claims.

Law No. 100 is the Puerto Rico equivalent of the federal ADEA.[4] It provides a cause of action in favor of those persons who suffer discrimination in their employment, among others, because of their age. Similar in several respect, the two statutes differ somewhat with regard to the burden of proof that they impose upon the parties.

With regard to Law No. 100 claims and the accompanying burden-shifting standard thereunder, this Court is guided by the Supreme Court of Puerto Rico cases such as *Narvaez v. Chase Manhattan Bank*, 120 P.R.Dec. 731 (1988); *Báez García v. Cooper Lab.*, 120 P.R.Dec. 145, 1987 WL 448243 (1987); *Ibáñez Benitez v. Molinos de Puerto Rico, Inc.*, 114 P.R.Dec. 42, 1983 WL 204221 (1983), and the interpretations thereof by the federal courts, such as *Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17, 27–9 (1st Cir.1998); *Menzel v. Western Auto Supply Co.*, 848 F.2d 327, 330–31 (1st Cir.1988); *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 741–45 (D.P.R.1997); *Maldo-*

*nado–Maldonado v. Pantasia Mfg. Corp.*, 983 F.Supp. 58, 65–66 (D.P.R.1997).

■ Much like a Title VII action, under Law No. 100 the employee bears the initial burden of presenting sufficient, probative evidence that he was discharged without just cause, this entails showing (a) that he was actively or constructively discharged and (b) the discharge was without "just cause". *Landrau Romero v. Caribbean Restaurants, Inc.*, 14 F.Supp.2d 185, 193 (D.P.R.1998)(citing *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 743 (D.P.R.1997); *Borrero–Rentero v. Western Auto Supply Co.*, 2 F.Supp.2d 197 (D.P.R. 1998); *Arthur Young & Co. v. Virgilio Vega III*, 94 J.T.S. 75 at 11962, 11972 (1994)). Provided the plaintiff proffers sufficient evidence to sustain a *prima facie* case, a rebuttable presumption of discrimination is established;[5] *see also, Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d at 27.

■ The most important difference between Law No. 100 and the ADEA is that when the Law No. 100 presumption has been triggered, it shifts not only the burden of production, but also the burden of persuasion, from the employee to the employer. *See Ibáñez Benitez v. Molinos de Puerto Rico, Inc.*, 114 P.R. Dec. 42, 52, 1983 WL 204221 (1983). Thus, in order to rebut the Law No. 100 presumption, the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory age animus. *Id.* at 53, 1983 WL 204221.

---

4. Law No. 100, in pertinent part, provides: "Any employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank, conditions or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employment opportunities, or to affect his status as employee, on the basis of ...age... shall incur civil liability... and [] he shall also be guilty of a misdemeanor."
29 L.P.R.A. § 146.

5. Law No. 100 provides that "[A]ny of the acts mentioned in the preceding sections shall be presumed to have been committed in violation of sections 146–151 of this title, whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character." 29 L.P.R.A. § 148. The acts referred to include dismissals, lay-offs and other disparate treatment regarding terms, rank or conditions of employment.

As noted above, the Law No. 100 presumption of discrimination is triggered only when the employee shows that the employer lacked "just cause" to discharge or take other adverse action with regard to the employee. In *Báez García v. Cooper Lab, Inc.*, 120 P.R. Dec. 145, 155, 1987 WL 448243 (1987), the Supreme Court of the Commonwealth of Puerto Rico has determined that, because Law No. 100 did not define the term "just cause," the term's definition would be sought in an analogous statute—Law No. 80. Law No. 80 defines a dismissal without just cause as "[a] discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment." 29 L.P.R.A. § 185b.

Law No. 80 further provides an illustrative list of reasons that are deemed to constitute "just cause" for a dismissal. With regard to acts or omissions imputable to the employee, the reasons include the employee's improper or disorderly conduct; negligent attitude towards his work or poor performance; violations of the employer's rules and regulations, 29 L.P.R.A. § 185b(a),(b) and (c).

With regard to circumstances not directly attributable to the employee, Law No. 80 considers as just cause for discharge the full, temporary or partial closing of the operations of the establishment; technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment; and reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge. 29 L.P.R.A. § 185b(d),(e) and (f). Law No. 80 further provides that in cases of discharges or lay-offs under subsections (d)(e) and (f), the employer should follow seniority (meaning seniority with the employer) within the occupational classification subject to the lay-off. However, if there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared, these efficiency or capacity factors shall prevail in the decision. 29 L.P.R.A. § 185c.

Applying the preceding rules, once the plaintiff has proven that he was discharged for unjust reasons, the burden of proof would shift to the employer to show that the discharge was based on nondiscriminatory reasons.

Conversely, if the employer proves that the discharge was justified, then the Law No. 100 presumption is not activated. Consequently, the burden of proof on the ultimate issue of discrimination remains with the plaintiff, as in any other civil case. The plaintiff must prove that, even if the dismissal was justified the defendant nevertheless violated Law No. 100, because the dismissal was motivated by discriminatory animus instead of or in addition to the legitimate reasons for dismissal. The Law No. 100 plaintiff is then in same situation as an ADEA plaintiff after the defendant has articulated a legitimate, nondiscriminatory reason for its actions. *Cardona Jiménez*, 174 F.3d at 42–43; *Alvarez–Fonseca*, 152 F.3d at 27–28.

As we have discussed above with regard to the ADEA claim, CPB was able to meet it's burden under Law No. 80 by proving that Seda's discharge was justified. The evidence is clear. The reorganization of the finance departments in the Puerto Rico and the Dominican Republic offices, the consequent elimination of the mission and project accountant positions, the creation of the senior accountant position, and Seda's poor performance as a mission accountant, were all reasons for Seda's termination. Undoubtedly, any one of these reasons constitutes just cause under Law No. 80.

Moreover, the elimination of the mission accountant position due to the creation of a new senior accountant position was a legitimate business decision related to the proper and efficient operation of defendant's activities. This is also related to the normal functioning of defendant's operations.

Given this evidence, no reasonable jury could find that CPB did not have just cause to dismiss Seda, regardless of the allocation of the burden of persuasion. Also, as we have discussed above with regard to his ADEA claim, no reasonable jury could find that Seda carried his burden of proof on the ultimate issue of discrimination.

Seda's own admissions demonstrate that the only basis for his allegation of age discrimination is the fact that he was the oldest employee working for CPB and therefore was earning the highest salary. The uncontroverted facts demonstrate that Seda's allegation is unfounded. However, even if the allegation is correct, it is insufficient to support an inference of age discrimination.

Therefore, defendant's motion for summary judgment dismissing plaintiff's Law No. 100 claim is hereby **GRANTED.**

## C. Law No. 80

▮▮ As discussed above with respect to plaintiff's Law No. 80 claim, defendant proved that plaintiff's discharge was with just cause. Plaintiff was dismissed as a result of the elimination of his position as mission accountant. This would appear to constitute just cause under Law No. 80. Even if we assume that the occupational classification in question should be read more broadly and include all "accountants," Pedrosa's uncontroverted superior performance justified his retention over Seda. 29 L.P.R.A. § 185c.

An additional basis exists to dismiss Seda's Law No. 80 claim.

▮▮ Law No. 80 provides an employee who has been terminated without just cause with the exclusive remedy of a discharge indemnity payment, calculated on the basis of the employee's salary and years of service. At the time of Seda's discharge, Law No. 80 provided that the indemnity payment for a wrongful discharge would be equivalent to one month's pay, plus an additional progressive indemnity equivalent to one week's pay for each complete year of service. In Seda's case, the Law No. 80 payment would have amounted to $13,445.81.[6]

The uncontroverted evidence presented by defendant shows that plaintiff accepted a voluntary termination payment of $17,-560.12, an amount in excess of what he would have been entitled to under Law No. 80. This Court has previously held that a wrongful discharge claim under Law No. 80 must be dismissed when an employer pays an employee a termination pay equal or greater than the Law No. 80 indemnity. *See Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 110 (D.P.R.1993).[7]

Accordingly, defendant's motion for summary judgment dismissing plaintiff's Law No. 80 claim is **GRANTED.**

## IV. CONCLUSION

In view of the above, defendant's motion for summary judgment (**docket No. 29**) is hereby **GRANTED** as to all of plaintiff's claims.

---

6. This is determined as follows:

```
$ 3,568.00  ×  12 months  =  $42,816.00
$42,816.00  ÷  52 weeks   =  $    823.38   weekly pay
$   823.38  ×  4.33       =  $  3,565.25   ("mesada"-one month pay under Law No. 80)
$   823.38  ×  12 weeks   =  $  9,880.56   ("progressive" indemnit y under Law No. 80)
                             $  3,565.25
                          +     9,880.56
                             $ 13,445.81   Law No. 80 payment
```

7. *See also, Selgas v. American Airlines, Inc.,* 858 F.Supp. 316, 326 (D.P.R.1994) and *Loubrido v. Hull Dobbs Co. of Puerto Rico, Inc.,* 526 F.Supp. 1055, 1061 (D.P.R.1981), which held that Law No. 80 payment is not due when a remedy granted in damages or backpay is greater than the Law No. 80 indemnity.

Judgment shall be entered accordingly.

IT IS SO ORDERED.