**STRYKER CORPORATION, Plaintiff,**

v.

**NATIONAL INSURANCE COMPANY, Defendant.**

**Civil No. 00–2199(RLA).**

United States District Court;
D. Puerto Rico.

Feb. 7, 2002.

Luis A. Oliver–Fraticelli, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Plaintiff.

Vicente Santori–Coll, San Juan, Todd B. Denenberg, Matthew L. Fiedman, Bingham Farms, MI, for Defendant.

### *ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

ACOSTA, District Judge.

Pending before the Court is plaintiff's motion for summary judgment on its claim for declaratory relief and damages, which defendant has duly opposed. A reply and surreply were also filed as part of the dispositive motion package, in compliance with this Court's Standing Order on the Procedure for Filing Dispositive Motions in Civil Trials, as amended effective May 18, 1998. For the reasons that follow,

after having reviewed the documents on record as well as the applicable law, plaintiff's motion for summary judgment is hereby **GRANTED** in its entirety.

## BACKGROUND

Plaintiff Stryker Corporation instituted these proceedings against its insurer National Insurance Company as a result of a dispute concerning its rights under a commercial insurance policy issued by National. Plaintiff requests a declaration that the proper deductible to be applied under the policy to its business income losses is $100,000.00. In addition, plaintiff requests an award of damages consisting of the difference between the $100,000.00 deductible allegedly applicable pursuant to the terms of the policy, and the approximately $2.7 million deductible actually applied by the insurer.

## THE FACTS

The following material facts are undisputed.

Plaintiff is in the business of manufacturing and marketing medical supplies and devices. It operates a manufacturing plant in Las Palmas Industrial Park, in Arroyo, Puerto Rico. For the period of January 1, 1998 through January 1, 1999, plaintiff purchased a primary "All Risk" Commercial lines Policy, No. CLP–98362 from defendant National. The National Policy provides coverage for loss of business income caused by service and supply interruption.

In September 1998, Hurricane Georges struck the island of Puerto Rico. Plaintiff suffered business losses on account of service and supply interruption. As a result, on July 20, 1999 plaintiff submitted a claim for business interruption losses to National. National agreed that plaintiff's claim was an insured business loss under the National Policy and has partially paid the claim.

The dispute between the parties involves the amount of the deductible properly applicable to plaintiff's claim. It is plaintiff's position that a $100,000.00 deductible is applicable pursuant to the terms of the National Policy. Defendant argues that a 2% Windstorm deductible is applicable to plaintiff's business interruption/time element claims. The difference is substantial: the 2% Windstorm deductible translates to a $2,686,434 deduction, according to defendant. Plaintiff further claims however, that even if the 2% Windstorm deductible applies, the same is capped at $100,000.00. As framed by the parties, the following are the issues pending resolution by the Court.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, summary judgment must be granted where the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Seda Soto v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints*, 73 F.Supp.2d 116 (D.P.R.1999).

"In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodríquez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997), and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997)'.

On issues where the nonmovant bears the burden of proof at trial, he may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative."

*Fajardo Shopping Center, S.E. v. Sun Alliance Insurance Co.*, 167 F.3d 1, 7 (1st Cir.1999). In this connection, "genuine issues of material facts can only arise out of competent and reasonably definite evidence actually contained in the summary judgment record." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir.1996). Thus, speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are insufficient in the face of a properly documented motion for summary judgment. *Id.* Furthermore, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Absent such a showing, the trial court must enter judgment for the moving party in accordance with "the plain language of Rule 56(c)." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## APPLICABLE LAW

Before turning to the merits of the parties' respective positions, we must first identify the applicable substantive law, a subject on which the policy itself is silent. In addition to Puerto Rico, the parties have identified one other forum that might have an interest in the resolution of this matter, namely the State of Michigan.

■ A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *New Ponce Shopping Center v. Integrand Assurance Co.*, 86 F.3d 265, 267–268 (1st Cir.1996). Puerto Rico has adopted the "dominant or significant contacts" test laid out in the Restatement (Second) of Conflict of Laws. *Servicios Comerciales Andinos, S.A. v. General Del Caribe*, 145 F.3d 463, 478–479 (1st Cir.1998). Thus, the laws of the jurisdiction with the most significant contacts with respect to the disputed issue will apply. *AM Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317, 320 (1st Cir. 1996).

The parties have not briefed this issue, opting instead to cite freely from caselaw in both jurisdictions. Although it is a close call, under the dominant contacts test it appears that Puerto Rico law should apply. The insured property is located in Puerto Rico, the insurer is a Puerto Rico corporation, and from what we can discern in the record, the insurance contract was entered into in Puerto Rico. We need not resolve the issue definitively, however, as the result of our analysis is the same under the substantive law of either jurisdiction. *See Steinke v. Sungard Fin. Sys. Inc.*, 121 F.3d 763, 775 (1st Cir.1997).

## THE NATIONAL POLICY

■ Construction of insurance contracts and application of their terms to established facts are matters of law, ultimately for this Court to determine. *Preferred Mut. Ins. Co. v. Travelers Co.*, 127 F.3d 136, 137 (1st Cir.1997). Here, the inquiry begins and ends with the National Policy itself.

■ Coverage for plaintiff's business income losses arises from the Business Income Coverage Form and the Off–Premises Services–Time Element Endorsement, neither of which the parties agree, contains any reference to an applicable deductible. Both parties call our attention to the following section of the policy:

| *DEDUCTIBLES:* | | |
|---|---|---|
| | $100,000 | Combined Property and Time Element, except |
| | $ 25,000 | Foreign Locations (DIC) Except Earthquake, Flood, Earthquake and Windstorm |
| | $ 25,000 | Property at Unnamed Locations |
| | $ 5,000 | Transit |
| | $ 5,000 | Exhibition |
| | $ 2,500 | Salesmen's Samples |
| | $ 2,500 | Physical Therapy Mobile Equipment |
| 5% TSI per location | $250,000 | Minimum-Earthquake |
| 2% TSI per location | $250,000 | Minimum-Windstorm |

This language clearly contemplates that a $100,000 deductible will be applied to "Time Element" losses of the kind at issue here, unless one of the specifically identified exceptions applies. Therein lies the root of the parties' dispute.

Defendant argues that the language of the policy quoted above makes the 2% Windstorm deductible applicable to plaintiff's claim. Plaintiff predictably disagrees and points to the language of the Windstorm deductible itself, among other things, as evidence that its scope does not extend to claims under the Business Interruption Coverage Form or Time Element endorsement. We agree with plaintiff's analysis.

The interpretation of the National Policy must be based on the totality of its terms and conditions, as expressed in the policy, and as modified through policy endorsements. *Quiñones López v. Manzano Pozas*, 1996 WL 499244, 96 JTS 95 (June 25, 1996) (citing Article 11.250 of the Insurance Code, P.R. Laws Ann. Tit. 26, § 1125 (1977)). When read together, the above-cited language of the National Policy and the text of the Windstorm endorsement lead to the inexorable conclusion that the Windstorm endorsement does not apply to plaintiff's business interruption losses.

The reference in Endorsement # 1 to the Windstorm deductible says nothing about its scope or applicability. As pointed out by plaintiff, and as is evident from a review of the policy itself, the 2% Windstorm deductible listed among other policy deductibles in Endorsement # 1 is spatially separated from the $100,000.00 deductible applicable to Time Element claims, and its exceptions. The natural reading of this section therefore suggests that the 2% Windstorm deductible is not one of the listed exceptions to the $100,000.00 Time Element deductible. More importantly, any doubt as to the appropriate interpretation of this section is conclusively laid to rest by a review of the specific language of the Windstorm endorsement itself.

On its face, the Windstorm endorsement modifies certain listed coverages, all of which relate to tangible property, not business income losses. As conceded by defendant, the Windstorm endorsement lists those coverages to which it applies, and there is no reference to the Business Income Coverage Form or the Time Element endorsement.

Thus, contrary to defendant's argument, there is no inconsistency in the language of Endorsement # 1 and the Windstorm endorsement. Rather, when read together, we are forced to conclude that the 2% Windstorm deductible only applies to the coverages listed on its face, which do not include business income losses. Thus, plaintiff's claim is subject to a $100,000.00 deductible. A contrary reading would require us to ignore the explicit language of

the very endorsement upon which defendant relies. This we cannot do. *Rodríquez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 586 (1st Cir.1993) (A contract is to be interpreted in a manner which gives reasonable effect to its terms and conditions); *Waldan Gen. Contractors, Inc. v. Michigan Mut. Ins. Co.,* 227 Mich. App. 683, 686, 577 N.W.2d 139, 140 (Mich. Ct.App.1998) (The court must look at the contract as a whole and give meaning to all terms.)

Our holding is consistent with other applicable rules of interpretation. Endorsement # 1 states explicitly that it "forms a part of policy No. CLP–98362". Furthermore, its heading reads: "IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING CONDITIONS ARE ADDED TO AND FORM PART OF THE POLICY". In contrast, the Windstorm endorsement states: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY". Thus, to the extent that a conflict is alleged to exist between the language of the Windstorm endorsement and Endorsement # 1, which we find does not, the specific words in the Windstorm endorsement must be given effect over any conflicting terms in Endorsement # 1. *See* 2 Couch on Ins. § 22:2 (3rd ed 2000); *Kmart Corp. v. Fireman's Fund Ins. Co.,* 88 F.Supp 2d 767, 774 (E.D.Mich.2000).

The parties devote considerable attention to issues such as whether the 2% Windstorm deductible is capped at $100,000.00 or whether the National Policy is a "manuscript" policy such that any ambiguities should not be interpreted against the insurer. Given our holding, it is unnecessary to delve into these issues too deeply, except to state that there is no evidence on record that plaintiff had any role in drafting the language of the Windstorm endorsement which caps the deductible at $100,000.00, and which arguably conflicts with Endorsement # 1, which sets a $250,000.00 minimum deductible for claims covered under the Windstorm endorsement. In fact, the pages comprising the Windstorm endorsement have at the bottom a notice of copyright by ISO Commercial Risk Services, Inc., suggesting that it is a form used by insurers rather than a specifically drafted document. In short, we find nothing in the record that would preclude the application of the "contra proferentem" canon of interpretation, which in Puerto Rico and Michigan, as in most states, favors the insured where the policy is ambiguous and the choice is between two plausible readings.

More importantly, any conflict between the amount of the Windstorm deductible stated in Endorsement # 1 and the language of the Windstorm endorsement form does not create any ambiguity as to the scope of applicability of the Windstorm endorsement as set forth in the language of the endorsement itself, which clearly shows that the Windstorm endorsement does not modify coverage for business income losses.

## CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment (docket No. 19)[1] is **GRANTED**.

Judgment shall be entered accordingly, directing defendant to pay the balance of plaintiff's claim, less the applicable $100,000.00 deductible.

IT IS SO ORDERED.

1. *See also,* defendant's opposition (docket No. 20); plaintiff's reply (docket No. 21); and defendant's surreply (docket No. 22).

## FINAL JUDGMENT

The Court having granted plaintiff's motion for summary judgment through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that defendant shall pay to plaintiff the balance of plaintiff's insurance claim for business income losses, less the applicable $100,000.00 deductible.

IT IS SO ORDERED.